James H. MOLLOY et al., etc., Plaintiffs, Appellants,

v.

BEMIS BRO. BAG COMPANY et al., Defendants, Appellees.

No. 5583.

United States Court of Appeals First Circuit.

Oct. 19, 1960.

Philip S. Jessup, Washington, D. C., with whom Robert D. Branch, Concord, N. H., was on brief, for appellants.

James D. St. Clair, Boston, Mass., with whom Joseph N. Welch, Jerome P. Facher, Boston, Mass., and William J. Starr, Jr., Manchester, N. H., were on brief, for appellees.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of New Hampshire which dismissed the plaintiffs' complaint.

The transactions out of which the instant case arose may be summarized as follows. In 1946 William Kirn was president and sole stockholder of the Claremont Paper Company, a New Hampshire corporation, which owned and operated a paper mill at Claremont, New Hampshire. Plaintiffs James H. Molloy and John D. Wilson entered a joint venture with Robert B. Gerard to exploit opportunities in the paper industry. After negotiations with Kirn the joint venturers, who adopted the name of Wilson Industry Associates, obtained an option to purchase all the assets of the Claremont Paper Company.

Defendant Bemis Bro. Bag Company (hereinafter referred to as Bemis) was a large manufacturer of paper bags, interested at that time in procuring additional sources of paper used in the manu-

facture of its multiwall bags. Bemis and the Associates entered into negotiations, and an agreement was reached whereby Bemis was to loan $900,000 in consideration of various steps to be taken by the Associates.

Pursuant to this agreement the Associates formed a new corporation, Claremont Paper Corporation (hereinafter referred to as Claremont of New Hampshire). The Associates supplied the entire paid in capital of $1,000 and transferred to Claremont of New Hampshire the option to purchase the assets of Claremont Paper Company. Bemis loaned $900,000 to Claremont of New Hampshire at 3% interest. The loan was to be repaid at the rate of $15,000 per quarter. In addition, all of the annual net income in excess of $100,000 was to be paid to Bemis in payment of the loan. Claremont of New Hampshire gave Bemis a promissory note for the $900,000 as well as a mortgage on all of its assets. In addition, Claremont of New Hampshire contracted to supply Bemis with 9,000 tons of paper per year at the average price paid by Bemis to others for paper of like quality and quantity. The mortgage secured the performance of this contract as well as the repayment of the loan.

Claremont of New Hampshire then began operating the mill. Kirn became president of Claremont of New Hampshire and manager of the paper mill. The capacity of the mill was nominally 15,000 tons of paper per year. Wilson undertook the development and sale of paper specialities in utilization of the excess capacity of the mill, theoretically 6,000 tons.

Wilson shortly thereafter organized a new corporation, Claremont Paper Corporation of New York (hereinafter referred to as Claremont of New York) to act as paper broker for the paper speciality products of Claremont of New Hampshire. Almost all the stock of Claremont of New York was held by Wilson, although apparently the joint venture agreement gave his associates an interest in the profits.

Bemis, when it learned of the situation involving Claremont of New York, took the position that the arrangement frustrated the loan agreement provision for payment of excess net income by draining away profits from Claremont of New Hampshire.

Claremont of New Hampshire did not meet the contract rate of delivery of 750 tons of paper per month to Bemis. Claremont of New Hampshire replied to demands for additional deliveries with a contention that it was excused under the contract provision suspending its duty to deliver during a period of inability by Claremont of New Hampshire to obtain raw material from its regular sources. Bemis contended that Claremont of New Hampshire was diverting some of its pulp supply to the manufacture of higher grade and more profitable paper products.

On September 16, 1948 Bemis filed suit in New Hampshire to foreclose its mortgage alleging that Claremont of New Hampshire had defaulted on the mortgage (1) by its failure to deliver in accordance with the paper contract, (2) by its sales to Claremont of New York, which were not in the normal course of business, (3) by the sale of part of the personal property covered by the mortgage and (4) by its failure to keep the plant and properties in good repair. Bemis also sought the appointment of a receiver because of the allegedly fraudulent conduct of Wilson, Molloy and Gerard in running Claremont of New Hampshire for the benefit of Claremont of New York. Simultaneously Bemis attached the New Hampshire bank account of Claremont of New Hampshire of approximately $100,000. Claremont of New Hampshire had, however, a New York bank account which was not attached.

Claremont of New Hampshire filed an answer to the bill which denied each of Bemis' allegations. Four days after the levy of the attachment the parties signed and filed a stipulation that released funds to the order of Kirn for use in the ordinary course of Claremont of New Hampshire's business. The parties then en-

tered into negotiations to attempt to settle the dispute.

On October 19, 1948 the negotiations concluded with a comprehensive settlement agreement. Under the agreement Molloy, Wilson and Gerard transferred to Bemis a total of 520 shares out of 1,000 issued by Claremont of New Hampshire. The stock could be recovered by the payment to Bemis of all monies due it from Claremont of New Hampshire before October 31, 1949, and a lesser number of shares could be recovered by fulfilling the terms of the settlement agreement and note and mortgage of May 8, 1946 without defaulting. Wilson transferred all the legally outstanding stock of Claremont of New York to Claremont of New Hampshire. The paper contract of May 8, 1946 was cancelled and Claremont of New Hampshire undertook lesser deliveries at stated prices in settlement of Bemis' claims under provisions of the May 8, 1946 contract. Bemis agreed to lend Claremont of New Hampshire up to $200,000 on its inventory and accounts receivable. The officers and all but one of the directors of Claremont of New Hampshire were to be elected by Bemis, and Bemis was to be free to cause Claremont of New Hampshire to be operated by its officers and directors in any manner satisfactory to Bemis, so long as such operation was in good faith. Claremont of New Hampshire was to enter a sales agency agreement with Crown Mark Paper Corporation or its successor. The contract could be terminated on 90 days notice if in the opinion of the directors of Claremont of New Hampshire such action was in Claremont of New Hampshire's best interest.

A sales agreement between Claremont of New Hampshire and Lynham Industrial Corporation, the successor to Crown Mark Paper Corporation, was executed April 5, 1949 and it contained the above termination clause. On October 1, 1949, following a vote of the Board of Directors of Claremont of New Hampshire, notice of termination of the contract was sent to Lynham.

A stockholders' meeting was held in April of 1950 to vote on the sale of all the assets of Claremont of New Hampshire. All of the Bemis stock, which was more than two-thirds as a result of the acquisition of Gerard's stock, was voted, under a proxy, in favor of the sale. Wilson's and Molloy's stock was voted by Molloy against the sale.

Following the placing of a notice of sale in several newspapers the assets of Claremont of New Hampshire were sold at auction and were bid in by Bemis for $500,000.

The plaintiffs filed a prolix 21 page complaint which was divided into three separate causes of action. The allegations made in the complaint as to each cause of action were extremely numerous and all were not entirely consistent with any one readily discernible cause of action. During and following the opening statement by counsel for plaintiffs the court questioned plaintiffs' counsel in an attempt to ascertain precisely the plaintiffs' causes of action. The responses by counsel to this line of inquiry were not completely clarifying in this regard; however, counsel did indicate acceptance of the court's specification of three causes of action.[1]

1. The district court immediately prior to the presentation of plaintiffs' first witness summarized the causes of action as follows: "The Court: You have got three causes of action, one, a derivative suit in behalf of Claremont Paper the cause of action being that they destroyed the value of the property and assets and then they illegally caused them to be liquidated. Your second cause of action is an individual cause of action that Molloy and Wilson were induced by duress to enter into the settlement.

* * * * *

[Counsel for plaintiffs]: It includes economic duress. The Court: Third is on behalf of Lynham Corporation in that Bemis wrongfully induced Claremont to breach its contract with Lynham. [Counsel for plaintiffs]: Yes. The Court: Now I suggest that both sides confine their evidence to those three issues. [Counsel for plaintiffs]: That is my intention and effort. * * *"

■ The plaintiffs contend that the district court erred by its elimination of issues, prejudicially surprising plaintiffs. In general we are in agreement with the district court that the complaint presents a "tangled web" of allegations. We agree with the district court also that it was in the interests of a speedy and orderly trial to narrow the issues. We believe also that the district court was within its discretionary right in conducting the trial to limit the issues to those involved in the causes of action as agreed to by plaintiffs' counsel.

■■ In its colloquy with plaintiffs' counsel, the court recognized as one cause of action the claim by Molloy and Wilson that their assent to the settlement agreement of October 19, 1948 was procured by duress. During the trial when evidence was offered that the foreclosure suit of September 16, 1948 was not brought in good faith by Bemis, the district court excluded the evidence. Under New Hampshire law, which was applied by the district court,[2] a suit which is not brought in good faith, i. e., without the honest belief that a good cause of action exists, is a type of duress. See Morrill v. Amoskeag Sav. Bank, 1939, 90 N.H. 358, 9 A.2d 519. Therefore, the issue of good faith in bringing the foreclosure suit was a relevant issue in the cause of action based on duress.

On this same cause of action the district court excluded evidence that Kirn had shut down part of the mill shortly prior to the filing of the foreclosure suit, and also a letter from Kirn to Bemis that stated that Molloy and Wilson were not given detailed reports of Claremont of New Hampshire's operations.[3] The district court indicated that these issues were not relevant to any of the three causes of action which were framed in the colloquy between the court and plaintiffs' counsel. The district court in summarizing the three causes of action stated:

"The Court: * * * Your second cause of action is an individual cause of action that Molloy and Wilson were induced by duress to enter into the settlement.

"[Counsel for plaintiffs]: Duress is one of the factors, but the fact that they were caused by a conspiracy which affected their suppressed information unjustly to—

"The Court: I thought you said duress.

"[Counsel for plaintiffs]: Duress is a factor, but I didn't mean duress in the sense that they had them by the arm and twisted it physically.

"The Court: I understood you to mean duress in the sense of what is sometimes called economic duress.

"[Counsel for plaintiffs]: It includes economic duress."

However, the contentions of plaintiffs which had been stated by counsel during the colloquy with the court were:

"[Counsel for plaintiffs]: The duress we claim is effective action by Bemis in connection with the manufacture and delivery of paper through officers of the corporation who should have been responsive to the wish of the majority of the stockholders, but who no longer were, but who were secretly working with Bemis.

"The Court: How is that duress against Molloy and Wilson to sell their stock to Bemis?

"[Counsel for plaintiffs]: Because if a company is denied any capital or profit, if it is driven down to the point subject to claims and charges, if there is an equity action filed under which all the credits are controlled, and a hundred thousand dollars in working capital credits is

2. The appellants do not object to the application of New Hampshire law to the question of duress.

3. Although the letter offered in evidence was written after the signing of the settlement agreement, the statement relating to Molloy and Wilson referred to the period prior to the settlement.

withdrawn by a large bank as a result of steps—

\* \* \* \* \* \*

"[Counsel for plaintiffs]: Duress is combination of detail; it is the combination of actions taken to break the company, to distress it financially to the point where they could not function. They owed money and they were going bankrupt.

"The Court: I think I understand you now. Your contention is then —and if I don't understand you correctly I want you to correct me— that because Bemis took steps to put the company in a very hazardous financial position that that constituted duress against Wilson and Molloy to sign this agreement.

"[Counsel for plaintiffs]: Yes.

"The Court: All right.

"[Counsel for plaintiffs]: And, also, your Honor, the overt action that gave them the instrumentality which was this alleged court action in equity charged them with everything in the world and then threw —."

■ We believe that plaintiffs' counsel made sufficiently clear that the plaintiffs were contending that Bemis, through some of the officers of Claremont of New Hampshire, was creating a financial burden on the plaintiffs and then pressing its advantage by instituting the foreclosure suit. In view of these statements we believe the district court was too restrictive when it later excluded evidence of the shutdown of the paper plant by Kirn and the withholding of cost information from the plaintiffs. The contentions as stated by counsel for the plaintiffs also indicate that the issue of lack of good faith in bringing the foreclosure suit was part of plaintiffs' theory of duress and could not be excluded by the court as not within the duress cause of action.

Another contention of error by the plaintiffs is the district court's ruling that as a matter of law there could be no offer of proof in relation to an excluded line of inquiry asked of a hostile witness. Rule 43(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides:

"Rule 43. *Evidence*

\* \* \* \* \* \*

"(c) *Record of Excluded Evidence.* In an action tried by a jury, if an objection to a question propounded to a witness is sustained by the court, the examining attorney may make a specific offer of what he expects to prove by the answer of the witness. The court may require the offer to be made out of the hearing of the jury. The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. In actions tried without a jury the same procedure may be followed, except that the court upon request shall take and report the evidence in full, unless it clearly appears that the evidence is not admissible on any ground or that the witness is privileged."

In Peckham v. United States, 1953, 93 U.S.App.D.C. 136, 210 F.2d 693, 702, the court said:

"\* \* \* The court was mistaken in basing his rejections upon the theory that during the cross-examination of an adverse witness proffers are never in order. When the examination is direct a proffer, though usual, is not invariably required to obtain review of exclusion of a question, see Rule 43(c), Fed. R.Civ.P., 28 U.S.C.A.; but neither is a proffer invariably inappropriate when the examination is cross and objection to a question is sustained. There is a discretion, which was not abused, and we may not assume it will be abused in the event of a retrial."

■ We believe that this is the proper rule in regard to an adverse witness on direct examination also. Indeed, to foreclose an offer of proof on direct examination, and prevent a party from making a

record, on the ground that the witness is presumed to be hostile and therefore may be cross-examined under Rule 43(b), would make that rule a burden upon the party for whose benefit the rule was intended. If the court fears, as this one suggested, that it is "physically or mentally impossible * · * * to know what you are going to elicit," Rule 43(c) provides ample means to resolve the difficulty. The court's denial of discretion on this matter prevented its weighing of the need and propriety of accepting an offer of proof. The record before us does not indicate that any such rejection of an offer of proof, or occasion for such an offer of proof, arose in connection with the causes of action other than duress. This point, therefore, does not require reversal of the district court on the other two causes of action.

In regard to all the causes of action plaintiffs contend that the district court erred in excluding notes and memoranda allegedly found in Bemis' files. Counsel for plaintiffs sought to introduce these as within 28 U.S.C. § 1732 (1958) which provides:

"§ 1732. *Record made in regular course of business; photographic copies*

"(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occur-

rence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility. * * *"

■ However, the offer of these papers was made without any foundation evidence of "regular course" such as is necessary to satisfy the statute. We, therefore, cannot say that the exclusion of these papers was improper.[4]

■ Plaintiffs contend that the district court erred on the derivative cause of action in holding that the proxy given by Bemis was valid. We do not find it necessary to determine the intent of the New Hampshire legislature in regard to general proxies from the rather indefinite language of N.H.Rev.Stat.Ann. § 294:86 (1955) since the district court also found that no objection was made to the proxy, and that this constituted a waiver of all objections. This finding is not clearly erroneous, particularly in view of the fact that Molloy was voting Wilson's stock without any written authorization at all.

Plaintiffs contend that there were various other errors.[5] We are satisfied from the record, however, that the district court did not commit prejudicial error.[6]

4. On one occasion the plaintiffs' counsel suggested that the proffered paper was admissible as an admission against interest. However, no foundation was laid showing the interest involved nor was any showing made as to who wrote it. The exclusion was proper on the grounds given for its admissibility, and no suggestion or foundation of any proper ground of admissibility was made, consequently there is no error in the district court's ruling.

5. The appeal taken from the order for separate trial of the counterclaim is not

properly before us under the judgment of the district court entered pursuant to F.R.Civ.P. 54(b).

6. The plaintiffs in their statement of questions presented raised numerous issues which the brief did not attempt to argue, or even precisely designate in the record. Ordinarily we do not feel constrained to search out such points. In the instant case appellants filed a 75 page brief, which should be sufficient to cover all the points relied on if the arguments are concise and orderly. The presentation of

Judgment will be entered vacating the judgment of the district court on the duress cause of action, remanding such cause of action for further proceedings not inconsistent with this opinion, and affirming the judgment of the district court on the other causes of action. The appeal from the order for separate trial is dismissed. No costs.

ALDRICH, Circuit Judge (concurring).

I am in full accord with the opinion of the court, but cannot resist commenting upon the pretrial practice, or rather, lack of it, that in all probability produced the situation requiring a new trial, and in any event set the stage for much of this appeal. This case was tried by a district judge from outside of the district. I do not know the reason, but presumably it was not unconnected with the fact that the case was advertised as one that would take six or more weeks to try. It was obviously a complicated and sizable matter. As the court points out, the complaint was 21 pages long, and not a model of clarity. Extensive depositions had been taken by the parties and a thousand exhibits had been obtained. Trial briefs had been filed. Yet we find that no pretrial proceedings had been conducted, and that the trial court's familiarity with the case apparently began with an examination of the papers the night before trial. When plaintiffs' counsel began his opening the court proceeded to examine him at length in attempting to shorten the issues, as well as rule on general questions of law. Whether a particular judge wishes to prepare himself in advance must be entirely up to him as an individual, difficult as this may be for the parties in some instances, who may feel that further preparation might have resulted in greater understanding. But when the court states, as here, that a colloquy between court and counsel during the opening constitutes a pretrial under Rule 16, I think that this is both an improper interpretation of the rule, and

an excessive burden upon counsel. If the court wished to shorten the case, earlier consideration might have avoided many difficulties. Certainly this seems a classic case for an advance pretrial.

In this particular case counsel, either from politeness, fear of offending the court, or some other reason acquiesced in the court's elimination or reduction of what he now claims were issues. In view of that acquiescence, the question is closed. Consequently, what I am stating is no longer relevant to this case, and I have not asked my brethren to include it in the opinion.

**BOWLING MACHINES, INC., Plaintiff, Appellant,**

v.

**FIRST NATIONAL BANK OF BOSTON et al., Defendants, Appellees.**

No. 5637.

United States Court of Appeals
First Circuit.

Sept. 26, 1960.

questions which an appellant does not brief for the court and vague references

to errors of exclusion are a presumption upon the appellate court.

nial of injunctions prayed for, but such denial presented only question of discretion and record contained no suggestion of abuse of such discretion, Court of Appeals would treat appellees' motions to dismiss for lack of jurisdiction as, alternatively, motions to dismiss appeal or affirm for want of substantial question, and as such would grant motions. Sherman Anti-Trust Act, §§ 1, 2, 15 U.S.C.A. §§ 1, 2; Clayton Act, § 2(a) as amended 15 U.S.C.A. § 13(a); 28 U.S.C.A. §§ 1291, 1292(a) (1), (b); Fed.Rules Civ. Proc. rule 54(b), 28 U.S.C.A.

---

James M. Malloy, Ralph Warren Sullivan, Morton Myerson, Leo V. Concannon, and Malloy, Sullivan & Myerson, Boston, Mass., on brief for appellant.

Joseph Ford, Thomas W. Wiley, and Bingham, Dana & Gould, Boston, Mass., on brief for First National Bank of Boston, appellee.

Robert W. Meserve, John R. Hally, and Nutter, McLennen & Fish, Boston, Mass., on brief for William F. Smith, appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.